**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LEONARD J. GULLOTA, II**
Elkhart, Indiana

ATTORNEYS FOR APPELLEE:

**ELIZABETH A. BELLIN**
**WILLIAM J. COHEN**
Cohen Law Offices
Elkhart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CAROL SHOWALTER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A03-1107-DR-332 |
| | ) | |
| DONALD SHOWALTER, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Steven Bowers, Judge
Cause No. 20D02-0806-DR-133

**February 22, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Carol Showalter appeals the denial of her motion to correct error challenging the trial court's order on various outstanding child support issues raised by Carol and her ex-husband, Donald. We remand.

## Issues

Carol raises two issues, which we restate as:

I.  whether the trial court properly calculated Donald's parenting time credit and resulting child support obligation; and

II. whether the trial court erroneously failed to address the issue of the parties' son's contribution toward his post-secondary education expenses.

## Facts

Carol and Donald, who have four children, were divorced in 2004. In 2009, the parties began litigating various issues related to custody and child support. Some issues were resolved by settlement agreement and others were addressed at an evidentiary hearing held on June 29, 2010, and July 23, 2010. At the time of the hearing, the couples' oldest child, Nicole, had graduated from college, their second oldest child, Brandt, was a college student, and their youngest two children, T.S. and K.S., were in high school.

At the hearing, six child support worksheets were presented to the trial court and, according to Donald's attorney, three covered all four children and three covered only Brandt, T.S., and K.S. The only difference between the various worksheets was the amount of parenting time credit awarded to Donald. The various worksheets provided for

parenting time credit calculations based on zero to fifty-one overnights, fifty-two to fifty-five overnights, or ninety-six to 100 overnights. All six worksheets showed an adjustment for post-secondary education expenses, calling for an increase of Donald's obligation by $12.60 per week and an increase of Carol's obligation by $14.90 per week.

On March 10, 2011, the trial court entered an order finding Nicole was emancipated. The order also provided in part:

19. Husband has exercised parenting time with [T.S.], but on something less than the full amount of parenting time. [T.S.] has been with Husband on approximately seventy (70) times in a one (1) year period. [K.S.] has spent the night with her father on February 9, 2008. Brandt has not spent nights with his father since college.

20. Husband sent a rent check to Brandt at college. Brandt did not cash the check immediately and by the time he did so, the account was closed.

21. When Husband was advised the check was not honored, he made payment to Brandt. There is no evidence that Husband intentionally failed to pay.

22. As of the hearing date, Husband is current on child support and college expenses.

23. The current child support order is one hundred and forty dollars ($140.00) per week.

24. The Court adopts the Child Support Obligation Worksheet number two (2) calling for Husband to pay child support in the sum of $192 per week.

25. Husband failed to pay post-secondary education expenses for Brandt as agreed by the parties and ordered by the Court.

26. Wife has incurred attorney fees in bringing her Rule to Show Cause.

3

Based on the foregoing findings, the Court now ORDERS:

> That the Husband's child support obligation be modified to $175 per week retroactive to April 27, 2009. This support order is further based upon the child support obligation worksheets submitted by the parties, blended to account for the fact that the children spend varying amounts of time with their parents. . . .

App. pp. 62-63. Child Support Obligation Worksheet number 2 was based on Donald receiving parenting time credit in the amount of $24.95 per week for fifty-two to fifty-five overnights.

On April 8, 2011, Carol filed a motion to correct error challenging the trial court's calculation of child support and the trial court's failure to address Brandt's contribution toward his post-secondary education expenses. A hearing on the motion was held on May 13, 2011. On July 8, 2011, after the motion to correct error was deemed denied, Carol filed her notice of appeal.

## Analysis

### I. Parenting Time Credit

Carol argues that the trial court improperly awarded Donald parenting time credit for fifty-two to fifty-five overnights and reduced his child support obligation from $192.00 to $175.00 after finding that only one child had visited with Donald approximately seventy times. "A trial court's calculation of child support is presumptively valid." Young v. Young, 891 N.E.2d 1045, 1047 (Ind. 2008). "We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to law." Id. (citing Ind. Trial Rule 52(A)). A decision is clearly erroneous if it

4

is clearly against the logic and effect of the facts and circumstances before the trial court. Id. In reviewing a trial court's formal findings, we are not at liberty simply to determine whether the facts and circumstances contained in the record support the judgment. Id. Rather, the evidence must support the findings made by the trial court and the findings in turn must support the judgment. Id. If the findings and conclusions entered by the trial court, even when construed most favorably toward the judgment, are clearly inconsistent with it, the decision must be set aside regardless of whether there was evidence adduced at trial that would have been sufficient to sustain the decision. Id.

"Because calculating the amount of financial burden alleviated by an overnight visit is difficult, the guidelines provide a standardized parenting time credit formula." Id. at 1048. "[I]f after calculating the noncustodial parent's child support obligation the court concludes that in a particular case application of the guideline amount would be unreasonable, unjust, or inappropriate, the court may deviate from that amount by entering a written finding articulating the factual circumstances supporting that conclusion." Id. (citing Ind. Child Support Rule 3); see also Ind. Child Support Guideline 6 cmt. ("If the court determines it is necessary to deviate from the parenting time credit, it shall state its reasons in the order.").

"According to the Indiana Child Support Guidelines, parenting time credit begins at fifty-two overnights annually." Hartley v. Hartley, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007) (citing Child Supp. G. 6). If a parent has fewer than fifty-two overnights annually, then that parent is not entitled to a parenting time credit. Id. "The Child Support Guidelines offer no direction for calculating parenting time credit when a parent spends

5

overnights with fewer than all of his children." Id.; see also In re Marriage of Blanford, 937 N.E.2d 356, 361 (Ind. Ct. App. 2010) ("[T]he Guidelines presume that each child will have the same number of overnight stays with the non-custodial parent.").

Here, the trial court found that Donald had seventy overnights with T.S. in a one year period, had no overnights with K.S. since February 9, 2008, and had no overnights with Brandt since he started college. The trial court adopted Child Support Obligation Worksheet number 2, which included a parenting time credit for Donald in the amount of $24.95 for fifty-two to fifty-five overnights and called for Donald to pay child support in the amount of $192.00 per week. The trial court then modified Donald's child support obligation to $175.00 per week, explaining, "This support order is further based upon the child support obligation worksheets submitted by the parties, blended to account for the fact that the children spend varying amounts of time with their parents." App. p. 63.

Donald appears to argue that the trial court's decision can be affirmed because he was available for overnight visitations with K.S. and because he had additional non-overnight visits with T.S. Although it may have been permissible for the trial court to consider these factors, the trial court did not enter findings explaining that it had taken these factors into account in calculating Donald's parenting time credit. In the absence of such findings, we cannot affirm the trial court's child support obligation on those bases.

Donald also argues that two children having fifty-two overnights is the mathematical equivalent of one child having seventy overnights for purposes of parenting time credit. Even assuming that it is appropriate to compare the parenting time credit in

6

this manner, Donald's argument does not account for the trial court's further reduction of his child support obligation from $192.00 to $175.00 per week.

Simply put, we cannot reconcile the trial court's finding that Donald had a total of seventy overnights with one of his three children, its finding that it was adopting Child Support Obligation Worksheet number 2, which called for Donald to pay $192.00 per week in child support based on fifty-two to fifty-five overnights, and the portion of its order further reducing Donald's support obligation to $175.00 based on the blending of the various worksheets, which were based on different numbers of overnights. Contrary to Donald's assertion, the trial court's order does not sufficiently explain its parenting time credit calculation. Accordingly, we remand for the trial court to specifically explain its reasons for calculating Donald's child support obligation of $175 per week, including the number of overnights for each child for which Donald is entitled to parenting time credit. If it is necessary to recalculate Donald's child support obligation, any such recalculation also should be supported by a specific explanation.

### II. Brandt's Contribution to Post-Secondary Education Expenses

Apparently, the parties had previously agreed that Brandt would pay the first 25% of his post-secondary education expenses and that they would proportionally split the remaining expenses. Brandt receives a scholarship of $4,000.00 per semester through a ROTC program. Brandt must repay the scholarship if he does not complete four and half years in the Marines after graduating. At the hearing, Carol argued that these benefits should count toward Brandt's 25% contribution. Donald argued that the ROTC scholarship should not count toward Brandt's 25% contribution and that Brandt should be

7

responsible for the first 25% of any expenses not covered by the ROTC scholarship. Although the trial court addressed another issue related to Brandt's post-secondary education expenses, it did not address this issue.

On appeal, Donald argues, "Since the money provided by the ROTC did not have to be paid back so long as Brandt commits to the Marines, both parents and Brandt benefit from this form of scholarship." Appellee's Br. p. 10. According to Donald, it is therefore unnecessary to modify the post-secondary education worksheet. In making this argument, Donald relies on Indiana Child Support Guideline 8(b), which provides in part:

> If the court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parents and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student. These latter sources of assistance should be credited to the child's share of the education expense unless the court determines that it should credit a portion of any scholarships, grants and loans to either or both parents' share(s) of the education expense.

(Emphasis added.) Apparently referring to the reduction from $192.00 to $175.00, Donald goes on to argue that the trial court properly adjusted both parent's child support obligation as a result of the scholarship Brandt receives.

Even assuming this was the trial court's intention, its order is not clear, and we remand for the trial to address this issue. On remand, in the absence of a determination by the trial court that Carol and Donald should be credited for a portion of the ROTC

scholarship, the ROTC scholarship should be credited toward Brandt's share of education expenses.

## Conclusion

We remand for the trial court to explain its calculation of the parenting time credit and, if necessary, to recalculate the parenting time credit and Donald's child support obligation. We also remand for the trial court to address the issue of whether Brandt's participation in ROTC should be credited toward his share of post-secondary education expenses.

Remanded.

KIRSCH, J., and BRADFORD, J., concur.